SAMUEL T. PARKER & others *vs.* GEORGE I. OLIVER & others.

Middlesex.    December 4, 1907. — May 20, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Voluntary Association.    Equity Pleading and Practice,* Master's Report.    *Words,* "Eligible to vote."

A voluntary association, called an improvement society, organized for the purpose of securing united effort in the promotion of such local improvements of a public nature as should be deemed advisable within a certain district of a certain town, the members of which hold a fair to raise money for the purchase of fire

apparatus or for fire protection in that district, and as a result of such fair and of contributions receive about $700, which is more than double what the fire apparatus contemplated by them would cost, in the absence of any objection on the part of the persons who contributed the money, by authority of a majority vote of the members of the association lawfully may use the money to purchase land and erect a building containing a hall for meetings and lectures with a place for fire apparatus.

In a provision, in the constitution of a voluntary association for the promotion of local improvements within a certain district of a certain town, that any person in the town "eligible to vote on town affairs" can become a member of the association by signing the constitution, the words "eligible to vote" do not require that the members should be registered voters but only that they should be persons qualified to be registered as voters.

In a suit in equity, where the validity of a vote of a voluntary association was in question which depended on whether two of the persons who voted were members of the association, and the constitution of the association provided that persons having the necessary qualifications might become members by signing the constitution, a master to whom the case was referred, found that the two voters had the necessary qualifications. As to one of them he found expressly that he had signed the constitution, while as to the other he made no express finding of that fact but found that he was a member. *Held*, that the finding last named necessarily must be taken to include a finding that the person in question had signed the constitution.

MORTON, J. This case is here on an appeal by the plaintiffs from a final decree dismissing the bill, and also on an appeal by them from an interlocutory decree overruling their exceptions to the master's report and ordering the report to be confirmed.

The plaintiffs and the defendants are members of a voluntary unincorporated association known as the Montrose Improvement Society organized in January, 1896, for the purpose of securing united effort in the promotion of such local improvements of a public nature as should be deemed advisable within the district of Montrose in the town of Wakefield. The last meeting was held on May 1, 1901, and between that date and the date of its organization many matters of a public nature relating to the improvement of the district were considered and acted upon by the society. The society held its meetings in a hall in an engine house belonging to the town and situated within the district and standing on leased land. A hose wagon and hose belonging to the town and a part of its regular fire department were kept in the engine house for the protection of the district, — an engine not being necessary as water could be thrown from hose attached to a hydrant over any building in the district. On May 4, 1899, the engine house was burned down and the hose wagon

and hose were destroyed. This left the district in danger from fire as there was no fire engine or apparatus located near the district. At the first meeting of the society held after the fire there was considerable discussion as to some kind of fire protection for the district, and a committee was appointed to wait upon the fire engineers " to see what we could get in the way of fire protection for this district." As a result of this action an old hose reel and five hundred feet of second hand hose were received from the fire engineers for use in the district and for aught that appears remained there. At this meeting the suggestion was made that a fair be held to raise money for the purchase of fire apparatus for the district, and at this and an adjourned meeting committees were appointed and arrangements were made to hold a fair. There was some dispute as to whether the vote was to hold the fair to raise money for the purchase of fire apparatus for the district, or to raise money for the purpose of fire protection. The master found that it was to raise money for the purchase of fire apparatus, but we do not regard the difference as material. A fair was held and as the result of it and of contributions that were received upwards of $700 was raised, which was a sum very largely in excess of what it was expected would be raised and of what a hose wagon, reel and hose would cost, which the master found to be less than $300. Thereupon it was suggested that instead of using the money to purchase a hose wagon, reel and hose it should be used to purchase land and erect a building containing a hall with a place for a hose wagon, reel and hose, and a committee was appointed to consider the subject of a building and to look up a suitable location and consider what the land could be purchased for. This appears to have been done without objection on the part of any one. The subject of the purchase of land and the erection of a building had been considered before by the society though nothing had been effected, and in the paper which was published in connection with the fair it was said, amongst other things, that " Montrose has many needs. A notably pressing one is for a suitable hall centrally located in which business meetings and social gatherings may be held." At the meeting at which the committee was appointed to consider the subject of a building, a committee also was appointed to obtain estimates and specifica-

tions for fire apparatus similar to that which was burned. Another committee was appointed to draw up an article to be inserted in a warrant for a town meeting in relation to purchasing a hose wagon and equipping the same to be located in Montrose providing the society would furnish a building or place for the same. It does not appear whether any, and, if any, what action was taken by the town in regard to this matter. It fairly may be inferred however we think, that it was expected that the town would furnish suitable apparatus. As a result of the report of the committee appointed to consider the subject of a building the society finally voted by a vote of twenty-seven to twenty-five to authorize the purchase of a lot of land as recommended by the committee, and appropriated for that purpose $300 of the money raised by the fair. A deed was taken in the names of trustees in trust for the use and benefit of all the people living and residing within certain described territory, which we assume to be the district of Montrose, and the trustees were authorized by the terms of the deed to erect upon the land such building or buildings as they might deem fit for use " for patriotic, charitable, scientific, military, theatrical, literary, aesthetic, educational, moral and religious purposes, and for meetings, lectures and addresses promotive thereof." Subsequently pursuant to votes passed by the society the rest of the money raised from the fair and contributions was paid over to the trustees. It does not appear that any building or structure has been erected by them on the land which they hold.

The plaintiffs contend that the funds that were raised could only be used for the purchase of fire apparatus for the district of Montrose, or for fire protection for that district, and that the use of them for the purchase of land and the erection of a building constitutes an unlawful diversion of them. They also contend that three of the persons who voted with the majority in favor of the purchase of the land and the erection of a building were ineligible to vote, and that the vote was therefore invalid.

It is to be noted that this is not a bill by contributors to a fund raised for a specific purpose to restrain its application to another purpose, or to compel a division of what remains after the purpose for which the fund was raised has been accomplished, as in *Abels* v. *McKeen*, 3 C. E. Green, 462, relied on by the complainants. No

contributors to the fund make any objection to the disposition which has been made of it. Nor is the case presented one, as in *McFadden* v. *Murphy*, 149 Mass. 341, of a dispute as to which of two rival factions in an association is entitled to the funds and property of the association. The case before us raises no such question. Nor, still further, is the question presented one of the right of the association to devote the funds to a purpose which does not come within any of the objects for which the association was organized. The purchase of a lot centrally located and the erection thereon of a building containing a hall for meetings and lectures would be as much of a public improvement, to say the least, as the purchase of fire apparatus. The question is whether the funds were impressed with any such trust that they cannot be used against the objection of a minority of the members of the society for any other purpose than the purchase of fire apparatus for the district or for fire protection. The funds belong to the society, and no one else has any interest in them. There is nothing to distinguish between what was received from the fair *per se* and what was received from contributions that were made. If a fire apparatus had been purchased there is nothing to show by whom or on what terms it was to be held, and it is plain that the society could not be compelled by the district to purchase fire apparatus notwithstanding its offer to do so. The action of the society in raising the money was entirely voluntary on its part, and although the purpose for which it was raised was the purchase of fire apparatus, if, on further consideration, a majority thought that, taking everything into account, it would be more for the benefit and improvement of the district to expend the money in some other way, we think that they had the right to do so, and that such action on their part would not constitute an unlawful diversion of the funds so long as the purpose to which they were devoted was an improvement of a public nature within the district.

The remaining question relates to the eligibility to vote of certain persons, Smith, Black and Goldsmith, who voted in favor of the purchase of the land and who, the petitioners contend, had no right to vote. The constitution provided that "any person in Montrose eligible to vote on town affairs can become a member of this society by signing the constitution."

Art. 4, § 1. It further provided that "An honorary member-ship may be allowed, and a vote on our affairs, also to persons living beyond the town limits, but whose interests are identical with ours." Art. 4, § 2. The master found that Black and Goldsmith were members of the society and as such had a right to vote, but that Smith did not have the right to vote. This left a majority of one in favor of the purchase. The evidence is not reported, except so far as contained in the master's report, and the question is whether upon the evidence thus reported and the facts found and rulings made by the master, the finding by the master that Black and Goldsmith were members and entitled to vote was clearly wrong. *Cram* v. *Brooks*, 189 Mass. 228. The plaintiffs contend that Black and Goldsmith were not eligible to vote on town affairs because they had not been registered as voters in the town. The master found in effect that they had not been so registered, but he found that they had the require-ments and qualifications necessary for registration as voters, and he ruled and found that that rendered them "eligible" within the meaning of that word as used in the constitution of the as-sociation. We think that the master was right. The word "eligible" has reference in the connection in which it is used to the qualifications necessary to constitute one a member of the association. If it had been the intention to confine the member-ship to those who could actually vote in town affairs the more natural way of expressing such a purpose would have been to provide that registered voters or persons "qualified to vote in town affairs," (to use the language of the statute, R. L. c. 11, § 330,) could become members by signing the constitution. By using the phrase "eligible to vote" something less than that a person was to be a registered voter would seem to have been contemplated; but, at the same time, a person could not fairly be said to be eligible to vote unless he had the qualifications necessary to warrant his registration. We therefore think that in order to entitle him to become a member of the association a person must have had the qualifications required to warrant his registration as a voter in the town, and that if he had such quali-fications he was eligible to vote on town affairs within the mean-ing of the constitution of the association, and could become a member by signing the constitution if he lived in Montrose.

This, as we understand it, is in substance what the master ruled and found. He expressly found that Black had signed the constitution, and although there was no express finding of that fact in regard to Goldsmith, his finding that Goldsmith was a member must be taken to include it.

*Decree affirmed.*

*J. J. O'Connor*, for the plaintiffs.

*J. W. Pickering*, for the defendants, submitted a brief.